1832.

THOMPSON
v.
HAMMOND.

---

ARIETTA M. THOMPSON and CLEAVELAND, her trustee, &c.

*vs.*

HAMMOND and others.

---

Although a *scire facias* is a judicial and not an original writ, yet it assumes the form and has all the attributes of an action at law.

A judgment by *scire ficias* is of the same force as any other; and a defendant cannot avail himself of his own neglect or omission as a ground on which afterwards to ask relief in equity.

---

The principal question arising in this cause was, whether a deed had been so far consummated by the late Daniel D. Tompkins as to vest in his daughter Mrs. Thompson a title to the six acres of land, which it was the object of the bill to have secured to her against the claims of the defendants and especially against the effect of the judgment held by the executors of her grand-father Mangle Minthorne, deceased?

The facts of the case will be found sufficiently referred to in the opinion of the court.

*November* 23, 1832.

*Effect of a judgment by scire facias.*

63

1832.                    Mr. *S. Sherwood,* appeared on the part of the complainants.

THOMPSON                  Mr. *William Kent,* for the heirs of Daniel D. Tompkins.
   *v.*
HAMMOND.
                         Mr. *David S. Jones,* for the executors of Minthorne.

                         Mr. *H. Storrs,* for other defendants.

*April* 1, 1833.   · THE VICE-CHANCELLOR.   It seems to me sufficiently prov-
                ed in this case, that a conveyance of the six acres in contro-
                versy to the complainant, Mrs. Thompson, was intended ; and
                that her father signed and acknowledged an instrument as his
                deed for this purpose before a proper officer.   And yet it ap-
                pears equally well established, that the deed was never in her
                possession nor actually delivered to, nor seen by her.   And
                still it is possible, enough was done to make out a case of ver-
                bal delivery, rendering the instrument operative as a convey-
                ance, notwithstanding its not coming to her hands : *Jackson* v.
                *Phipps,* 12, *J. R.* 421 ; 3 *Mason,* 401.   On this point, how-
                ever, there is great doubt ; and if it were the only one in the
                case, perhaps the most prudent course would be to award an
                issue before determining it against Mrs. Thompson.

                     But, assuming, for the present, the fact to be that the deed
                was duly executed and delivered, there are objections raised,
                on several grounds, as well against its original validity, as for
                the purpose of defeating altogether the title which she may
                have acquired under it.

                     The first objection is, that the deed was voluntary, founded
                upon natural love and affection, and given when the grantor
                was deeply involved in debt ; and, consequently, void as to
                creditors.   Among his then liabilities, was a bond for securing
                the payment of twenty thousand dollars to Mr. Minthorne ;
                and upon which a judgment was afterwards entered in his
                favor.   The facts in support of this objection appear in the
                proofs.   As a general rule, a deed given under such circum-
                stances is *prima facie* fraudulent.   Yet, possibly, it may not
                be absolutely void.   The presumption of fraud is liable to be

repelled by circumstances ; *Jackson* v. *Seward*, 8, *Cow.* 406 ; *Hindes, lessee* v. *Longworth*, 11. *Wheaton*, 199. This objection, consequently, is not decisive of the case.

The next appears to be, that the land, at the time of the intended conveyance, was under mortgage to St. Andrews Church. This mortgage was subsequently forclosed. Mrs. Thompson and her husband were made parties defendants to it ; on account of her supposed title and interest. A decree of foreclosure and sale took place ; and the property was sold and purchased on behalf of the church. And the objection last refered to proceeds upon the ground of Mrs. Thompson's having been divested of all title and ownership by this proceeding, even admitting she had a previous valid deed.

On the other hand, it is contended, that inasmuch as the sale was made upon an understanding, that if the church should buy in the property they would reconvey to her father at any time upon payment of their debt, and as he afterwards did pay them off and take a conveyance, it enured to her benefit as to the six acres and reinstated her title thereto. I am not sure this last transaction had such an effect. The equity of redemption was gone ; and the complainant's title was extinguished by the decree of foreclosure. Governor Tompkins did not get back the property by a redemption, although it may have been so called by the parties. It was, to all intents, a repurchase, which the church, as a matter of favor, gave him the privilege to make at a price sufficient to cover their debt and costs. He, thus, acquired a new title and seizin ; and was not remitted to his former estate or seizin. The doctrine of remitter has here no application : *Coke Litt.* 347. *b. n.* 1. Now, although as a general rule, if a man sell an estate to which he has no title and, after the conveyance, acquires the title, the purchaser will be entitled to hold and can compel a new deed ; yet, it may well be doubted, whether this rule applies to the present case : for, here, there was originally a title, although encumbered by a mortgage which defeated it. In such a case, I apprehend the party is to be left to his remedy upon the covenants in the deed for damages. If there are no

covenants against encumbrances and eviction, I do not perceive how he has any claim to relief in this court by way of compensation: *Abbott* v. *Allen*, 2 *J. C. R.* 523; *Chesterman* v. *Gardner*, 5. 1*b*. 29; *Gouverneur* v. *Elmendorf*, *Ib*. 79. It does not appear whether there were such covenants in the deed alleged to have been executed by Governor Tompkins to his daughter. The contents of the deed are not proved; and it is not even shown what estate she was to take in the land. The absence of all proof on this subject, does not, however, according to my views, make any difference.

Without some further act by Governor Tompkins, after he took the reconveyance from the church, to reinstate the title in his daughter, I am of opinion she must be regarded as having no title which a court of law can now recognize or equity aid her to establish. Besides, there is evidence which would seem to justify the conclusion, that when Governor Tompkins became convinced he could not secure to his daughter a perfect title by reason of his pecuniary embarrassments and the existence of encumbrances which he found himself unable to remove, the intention of giving her a deed was abandoned and the agreement for this purpose rescinded. This was in the year one thousand eight hundred and twenty-four: for in July, August and September of that year, and almost immediately after the reconveyance from the church, Governor Tompkins refunded to her husband in payments, at different times, the sum of two thousand five hundred dollars, being the amount of money advanced by her grandfather, Minthorne, and by his will afterwards deducted from her portion of his estate; and which, it is alleged, had been laid out in the building of the dwelling house upon the lot in question. The title having failed or he being unable to give one free from encumbrances, a natural equity arose in favor of his daughter, that her money expended there should be refunded. This was done; and it was evidently the result of an agreement. The receipts plainly show how the moneys paid back were for amounts expended in building which he had promised to refund. In addition to all this, it is apparent from the testimony in the

cause, that the possession was in Governor Tompkins from this time to the period of his death; and various facts go to strengthen the inference of there having been a relinquishment, by mutual consent, of all claim to any title or interest which the complainant or her husband had in the property, except so far as the equity went of her having the two thousand five hundred dollars refunded.

But if this should prove to be an erroneous view of the case, there is another ground which presents an insuperable difficulty to the complainant. On the bond which was executed by Governor Tompkins to Mr. Minthorne, in the month of May one thousand eight hundred and sixteen, for twenty-five thousand dollars, conditioned for the payment of twenty thousand dollars, a judgment was entered up in the supreme court of this State and docketted on the thirteenth day of July one thousand eight hundred and twenty-one; and, upon this judgment, a writ of *testatum fieri facias*, returnable in August of the same year, issued to the sheriff of Richmond county. Under it, the Sheriff levied and made out of the property of the defendant and paid over to the plaintiff, on account of his debt, seven hundred and twenty-three dollars. Two other judgments had been recovered in the May previous; one, by the American Insurance Company, and the other, by the Mechanics' Bank. In the year one thousand eight hundred and twenty-eight, writs of *scire facias*, upon all these judgments, were sued out against the heirs and tenants of the lands of which Governor Tompkins was seized at the time of the rendition of the judgments in one thousand eight hundred and twenty-one, for the purpose of reviving the judgments and having execution against all such lands. On the judgment in favor of Minthorne, the *scire facias* issued in the names of his executors. The process was continued by *alias* writs until the parties named therein were summoned. The sheriff of Richmond county returned Mrs. Thompson and the other married daughters of Governor Tompkins, with their respective husbands and all his other children named in the writs, as tenants of a tract and parcel of land, describing it by metes and bounds, and which included

the six acres in question; and, that he warned them to appear. Upon their default in not appearing, judgments were rendered in favor of the plaintiffs in each case to the effect that they have execution for their debts against Mrs. Thompson and her husband and the other parties to be levied on the messuage, lands and tenements whereof they were respectivly returned tenants, and against them also as heirs at law, to be levied on all the lands and tenements of which their father was seized in the year one thousand eight hundred and twenty-one.

These judgments were severally docketted on the twelfth day of August one thousand eight hundred and twenty-nine; and executions thereupon issued accordingly. Those in favor of the American Insurance Company and the Mechanics' Bank were satisfied out of the lands levied upon and sold by the the sheriff, exclusive of the six acres. While attempting to sell the six acres, an injunction was served, which had been granted upon the filing of the bill in this cause, and by which the executors of Mr. Minthorne, as plaintiffs in that execution and as having a control of the two other executions, were restrained from selling the six acres.

The question, therefore, is upon the effect to be given to the judgment on *scire facias*?

Mrs. Thompson was made a party to the proceeding, not merely in her representative capacity as one of the children and heirs at law, but also as a tenant of the lands. At any rate, she was summoned as one of such tenants; and this was probably in reference to the house and six acres—for, about that time, according to her letter which is dated the twenty-ninth of February one thousand eight hundred and twenty-nine, we find her asserting a claim to this part of the property and endeavouring to prevail upon the other heirs to release the same to her. The proceedings appear to have been conducted with peculiar care and regularity and in conformity with the requirements of law, as laid down in the case of *Morton v. Croghan*, 20. *J. R.* 106., so as to render the judgments when obtained effectual and binding.

Now, although a writ of *scire facias*, in cases of this sort,

is a judicial and not an original writ, yet it assumes the form and has all the attributes of an action at law. If the defendant appears, the plaintiff files a declaration ; and the former pleads. A release of all actions is held to be a bar: because it is considered in law as an action—and a variety of matter may be pleaded in abatement and in bar. Mrs. Thompson, with her husband, might have appeared and have pleaded (as to the part of the land which she now claims to belong to her by virtue of the deed from her father,") that he was not seized "thereof when the judgments were recovered against him" or, in other words, that she held as tenant in her own right, by title which had accrued to her prior to that time ; and such plea, upon being supported by proof, would have been a good defence. She, however, suffered judgment to pass against her by default. This was virtually an admission of record that this particular parcel of land, in common with the rest, was bound by the judgment and liable to execution.

I know not how to distinguish this proceeding from an ordinary case where a party has an opportunity to make a defence at law and neglects to do so and whereby a judgment is rendered against him. Such a judgment, if regularly obtained, is of the same force and efficacy as any other ; and the defendant cannot avail himself of his own neglect or omisssion as a ground on which afterwards to ask relief in equity. I think Mrs. Thompson is concluded by the judgment on *scire facias*, in favor of the executors of Minthorne, from averring or setting up any thing to the contrary.

In *Whitney* v. *the terre-tenants of Crosby*, 3. *J. R.* 87. a motion was made to set aside a *scire facias* and a judgment obtained thereon by default. The proceedings had been regular ; and the defendants, as terre-tenants, duly warned. It was objected, that the heir and personal representatives of the deceased judgment debtor had not been previously warned. But the court held the terre-tenants ought to have availed themselves of the omission by plea, and came too late to make the objection after a judgment by default. And they were equally too late to be heard upon the allegation that they were not

1832.

THOMPSON
*v.*
HAMMOND.

such terre-tenants as ought to have been summoned upon the scire facias.

In *Jackson* v. *Robins*, 16. *J. R.* 579, *Kent, C. J.* had occasion, in delivering an opinion in the court of errors and which was unanimously concurred in, to show the binding efficacy of a judgment upon *scire facias* against the heir and terre-tenant. By suffering the judgment to pass by default, he considered all the rights of the party were waived and abandoned : although, at the time, the husband of a feme covert was not returned by the sheriff as summoned with her. The objection, he says, if good at all, should have been pleaded in abatement. It was cured by the default; and, at most, was but matter of error. He then cited a number of cases which presented, in a strong light, the necessity of appearing and pleading to a *scire facias*, if the party had any defence to make or any rights to protect ; and which all show that, in consequence of suffering a default, the party is precluded from any relief, " even " though he may have the most pressing equity in his favor."

If this be the true doctrine, and it appears to me to be well founded in principle, then it is in vain for Mrs. Thompson to undertake an impeachment of the validity of the original judgment confessed by her father to her grandfather on the want of consideration or for any other cause or to assert rights and set up claims inconsistent with its legal effect and operation. Every thing necessary to give it full effect stands admitted. She has not thought proper to deny, when called upon for the purpose, that the judgment was a valid and subsisting one for the whole amount claimed to be due upon it as recited in the writs of *scire facias*.

But it is said, Cleaveland, the trustee, is not concluded by the judgment on *scire facias*—and that the proceedings do not apply to or affect him, as he was not a party to them.

This point deserves a moment's attention. There is no evidence before me to show exactly how or when he became a trustee. No deed or other instrument containing his appoinment and powers or declaring the trusts is produced. The only title in him, as to the property in question, is, first, a deed

poll, dated the twenty-first day of November one thousand eight hundred and twenty-eight, executed by Gilbert L. Thompson alone, and by which he releases and quit claims all his estate, right, title and interest in and to the six acres, to Mr. Cleaveland, as Trustee for Mrs. Thompson, and as and for her separate estate ; and, secondly, a deed of release executed on the twenty-seventh day of July one thousand eight hundred and twenty-nine by three of the assignees of Governor Tompkins' estate, under a general assignment made by him on the fifteenth day of January one thousand eight hundred and twenty-two, in trust, for the benefit of his creditors, and by which these assignees also release and quit claim to Mr. Cleaveland, as such trustee, all the right, title, interest, claim and demand which they had in all the real estate, situated on Staten Island, but not elsewhere, whereof Governor Tompkins was seized at the time of his assignment to them. The real estate thereby assigned was, of course, subject to all prior liens, judgments, mortgages and incumbrances thereon, and is so expressed in the body of the instrument. Now, perhaps, it is sufficient to say, that the bill in this cause does not proceed upon the title which Mr. Cleaveland acquired by these two releases, but, upon supposed legal and equitable rights which Mrs. Thompson had acquired for herself long previous; and which, by some act of her own, was transferred to and vested in him to hold in trust for her separate use. And I must presume, that by the releases from her husband and the assignees, it was only intended to confirm and strengthen such right. Whatever the right was, if it existed at all, it is manifest it existed when the proceedings by *scire facias* commenced. Although nominally vested in another as a trustee, yet the whole beneficial ownership and interest remained in Mrs. Thompson ; and she having been a party to the proceeding as terre-tenant and enjoying the right, it appears to me nothing more was necessary to render the judgment binding and conclusive as to her right.

But, if we are to consider Mr. Cleaveland, in respect to the legal estate in him, as separate and distinct from Mrs. Thompson and her equitable interest : what, as the case now stands,

64

1832.

THOMPSON
v.
HAMMOND.

does it amount to? It is not even pretended that Gilbert L. Thompson ever had title in himself. The release which he gave, therefore, could only pass the interest a husband has in the estate of inheritance of his wife. If she has no such estate in particular lands or is deprived of it by her own default, all interest of the husband must also fail and his deed or release conveys nothing.

The release from the assignees is different. A title passed by it; but it was subject to all incumbrances created prior to the fifteenth day of January one thousand eight hundred and twenty-two and existing when the release was given; and the judgment in favor of Minthorne was one of them.

As regards Mr. Cleaveland's not being a party to the *scire facias*, I think he cannot avail himself of any objection on that ground. He accepted the title *pendente lite* and at a time when the proceeding was nearly completed. In fact, as appears by the record, after defaults had been entered as well against the parties who executed the release as against Mrs. Thompson, the *cestui que trust*. Consequently, the title he had acquired could not be otherwise than subject to the legal consequences which flowed from the proceeding, provided he took no measures to interpose and prevent the consummation of a judgment.

But there is another circumstance, I think, whereby Mr. Cleaveland, as the trustee, is estopped from denying the validity of the judgment on *scire facias* and the right of the executors of Minthorne to have execution against the land in question. He became the purchaser, at a sheriffs' sale, of other parts of the property under the executions issued upon this judgment and judgments in favor of the American Insurance Company and the Mechanics' Bank, all of which had, at the same time, been in like manner revived. In the month of April one thousand eight hundred and thirty-one, he paid the purchase sum of five thousand dollars; and received the sheriff's deed for the land. This deed recites all three of the executions as the authority for the sale and conveyance.

If there were no other reasons for holding the judgment on

*scire facias* as binding upon him in respect to the alleged trust estate, this alone would be sufficient to preclude him from raising objections against it. Having admitted the judgment and execution to be effectual for a part, he necessarily admits it to be equally so for the whole of the property embraced in the release to him from the assignees of Governor Tompkins; and which, according to the evidence before me and the view I am now taking of the subject affords the only ground for a pretence of title or estate in him, in opposition to the judgment and execution.

Upon the whole, I cannot but regard the claim set up on the part of Mrs. Thompson as entirely unfounded. I must, accordingly, dissolve the injunction, which restrains the executors of Minthorne from selling the house and lot of six acres under their execution; and, likewise, dismiss her bill, with costs—which are to be paid out of her separate estate in the hands of the trustee.